UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| MICHAEL DINAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 2:10-cv-00340-JAW |
|  | ) |  |
| ALPHA NETWORKS, INC. | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

An individual plaintiff has sued his former employer for money he claims the employer owes him from his period of employment. The former employer has counterclaimed for an alleged breach of an employment separation agreement. Both have moved for summary judgment. The Court denies the motions because viewing the record in the light most favorable to the employer, the separation agreement is valid and provides a defense to the employee's causes of action, which are based on the agreement's assumed invalidity, and viewing the record in the light most favorable to the employee, the separation agreement is invalid and therefore provides a defense to the employer's counterclaim, which is based on the agreement's assumed validity. The Court concludes that the validity of the agreement can only be resolved by a factfinder.

**I.    STATEMENT OF FACTS**

    **A.    Procedural History**

On July 21, 2010, Michael Dinan filed a complaint in state of Maine Superior Court against Alpha Networks, Inc. *Notice of Removal* Attach. 1 (Docket # 1)

(*Compl*). On August 13, 2010, Alpha removed the case to this Court pursuant to its diversity jurisdiction. *Notice of Removal* (Docket # 1). On September 1, 2010, Alpha answered and asserted a counterclaim. *Def.'s Ans., Affirmative Defenses and Countercl.* (Docket # 9). On September 9, 2010, Mr. Dinan replied to the counterclaim. *Pl.'s Ans. and Affirmative Defenses to Countercl. of Alpha Networks, Inc.* (Docket # 12).

On November 12, 2010, Mr. Dinan moved for summary judgment against Alpha on Counts Two and Three of its Counterclaim only. *Pl.'s Mot. for Summ. J. as to Counts Two and Three (as Count Three Relates to the Separation Agreement and General Release) of the Def.'s Countercl.* (Docket # 25) (*Pl.'s Mot.*). On December 3, 2010, Alpha responded and moved for cross-summary judgment on Mr. Dinan's Complaint. *Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. and Cross-Mot. for Summ. J.* Attach. 1 (Docket # 27) (either as *Def.'s Opp'n* or *Def.'s Mot.*). On December 17, 2010, Mr. Dinan responded to Alpha's motion for summary judgment and replied to Alpha's response to his motion for partial summary judgment. *Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. and Reply to Def.'s Opp'n to Pl.'s Mot.* (Docket # 30). On January 3, 2011, Alpha replied to Mr. Dinan's response. *Def.'s Reply to Pl.'s Opp'n to Cross-Mot. for Summ. J.* (Docket # 34) (*Def.'s Reply*).

**B. The Plaintiff's Motion: Facts Viewed in the Light Most Favorable to Alpha[1]**

---

[1] In accordance with the "conventional summary judgment praxis," the Court recounts the facts for each moving party in the light most favorable to the non-movant's theory of the case consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

Michael Dinan worked for Alpha Networks, Inc. (Alpha) until March 12, 2010 when he voluntarily separated from Alpha. *Pl.'s Statement of Uncontested Facts* ¶ 1 (Docket # 26) (PSUF); *Def.'s Resp. to Pl.'s Statement of Uncontested Facts* ¶ 1 (Docket # 29) (DRPSUF). Before his resignation, Mr. Dinan entered into discussions concerning the terms of his separation with Hander Hsing, the President of Alpha. *Def.'s Statement of Additional Facts* ¶ 1 (Docket # 29) (DSAF); *Pl.'s Resp. to Def.'s Statement of Additional Facts* ¶ 1 (Docket # 31) (PRDSAF). On March 12, 2010, Mr. Dinan signed a Separation Agreement and General Release, which required Alpha to pay him $26,666.67. PSUF ¶ 2; DRPSUF ¶ 2. The amount was reduced by federal and state taxes and FICA to $14,007.97. PSUF ¶ 2; DRPSUF ¶ 2. On March 12, 2010, Alpha gave Mr. Dinan two checks totaling $14,007.97 and a third in the amount of $5,434.71. PSUF ¶ 3; DRPSUF ¶ 3; DSAF ¶¶ 3, 5; PRDSAF ¶¶ 3, 5. Alpha issued the third check pursuant to Paragraph 3 of the Separation Agreement in which Mr. Dinan confirmed that Alpha had paid him "for all wages, commissions, overtime, bonus and accrued but unused vacation or paid time-off that he had earned during his employment with [Alpha]."[2] DSAF ¶ 4; PRDSAF ¶ 4. In a separate document, Mr. Dinan acknowledged that the amounts in Paragraph 3 compensated him entirely for any amounts he was due as a result of his employment at Alpha. DSAF ¶ 4; PRDSAF ¶ 4.

When Mr. Dinan and Mr. Hsing discussed the Separation Agreement between Mr. Dinan's letter of resignation dated March 3, 2010 and his execution of

---

[2] Mr. Dinan denies this statement but in analyzing his motion for summary judgment, the Court must view the facts in the light most favorable to Alpha's theory of the case consistent with record support. *Gillen*, 283 F.3d at 17.

3

the Separation Agreement, Mr. Dinan admitted that in December 2009, Alpha had advanced him $4,000 and Mr. Hsing informed Mr. Dinan that Alpha would deduct the $4,000 from the severance amount. DSAMF ¶ 6; PRDSAMF ¶ 6. Mr. Dinan and Mr. Hsing agreed that the severance amount should be reduced by $4,000 to $22,666.67. DSAMF ¶ 6; PRDSAMF ¶ 6. However, when Alpha's Office Manager, Sherry Kwang, issued the checks, she neglected to deduct the $4,000 and Alpha sent Mr. Dinan the full $26,666.67 less withholdings. DSAMF ¶ 6; PRDSAMF ¶ 6.

Mr. Hsing was in Hong Kong when he learned about Ms. Kwang's mistake and he instructed her to alert Mr. Dinan and tell him not to deposit the checks because the amount was incorrect. DSAMF ¶ 7; PRDSAMF ¶ 7. Ms. Kwang did not receive a response from Mr. Dinan and Mr. Hsing authorized her to place a stop payment order on the two checks. DSAMF ¶ 7; PRDSAMF ¶ 7. After Mr. Dinan cashed the first two checks, his bank, Key Bank, returned the checks to him, stating they could not be cashed because no later than March 18, 2010, Alpha had placed a stop payment order against both checks. PSUF ¶ 3; DRPSUF ¶ 3.

On March 15, 2010, Alpha sent Mr. Dinan a First Amendment to the Separation Agreement, which contained the correct amount, reducing Alpha's payment by $4,000, DSAMF ¶ 8; PRDSAMF ¶ 8, and on that same day, Mr. Dinan received the First Amendment to the Separation Agreement and General Release. PSUF ¶ 4; DRPSUF ¶ 4. Mr. Dinan refused to sign the First Amendment. PSUF ¶ 4; DRPSUF ¶ 4. In the weeks that followed, Alpha attempted to convince Mr. Dinan to accept the lower amount of $22,666.67, but Mr. Dinan refused. DSAMF ¶

4

9; PRDSAMF ¶ 9. In May, 2010, Alpha sent Mr. Dinan two checks, which totaled $14,007.97, but Mr. Dinan never cashed these checks. PSUF ¶ 5; DRPSUF ¶ 5; DSAMF ¶ 10; PRDSAMF ¶ 10.

### C. The Defendant's Motion: Facts Viewed in the Light Most Favorable to Michael Dinan[3]

Michael Dinan worked for Alpha until March 12, 2010 when he voluntarily separated from Alpha. PSUF ¶ 1; DRPSUF ¶ 1. Before his resignation, Mr. Dinan entered into discussions concerning the terms of his separation with Hander Hsing, the President of Alpha.[4] DSAF ¶ 1; PRDSAF ¶ 1. On March 12, 2010, Mr. Dinan signed a Separation Agreement and General Release, which required Alpha to pay him $26,666.67. PSUF ¶ 2; DRPSUF ¶ 2. The amount was reduced by federal and state taxes and FICA to $14,007.97. PSUF ¶ 2; DRPSUF ¶ 2. On March 12, 2010, Alpha gave Mr. Dinan two checks totaling $14,007.97 and a third in the amount of $5,434.71. PSUF ¶ 3; DRPSUF ¶ 3; DSAMF ¶ 3; PRDSAMF ¶ 3. The first two checks represented the severance payment set out in Paragraph 2 of the Separation Agreement. DSAMF ¶ 5; PRDSAMF ¶ 5. The third represented the payments set out in Paragraph 3 of the Separation Agreement less applicable withholdings, and Mr. Dinan received that third check on March 13, 2010, and deposited it in his bank account the same day. DSAMF ¶ 3; PRDSAMF ¶ 3.

---

[3] Again, the Court has recounted these facts in the light most favorable to the non-movant, here Mr. Dinan.
[4] In response to Alpha's Statement of Additional Facts, Mr. Dinan denied paragraph four but interposed a long explanation for his denial. DSAF ¶ 4; PRDSAF ¶ 4. Mr. Dinan's lengthy response does not conform with the Local Rules, which allow the party opposing a statement of material fact to admit, deny or qualify the facts and shall support each denial or qualification by a record citation as required by this rule. LOC. R. ME. D. 56(c). Mr. Dinan has not properly placed before the Court the factual assertions he made in his denial and the Court has not considered them.

5

On March 16, 2010, Alpha stopped payment on the checks totaling $26,666.67. DSAMF ¶ 7; PRDSAMF ¶ 7. Alpha then attempted to convince Mr. Dinan to accept the lower amount of $22,666.67 but Mr. Dinan refused because he did not believe he was obligated to repay the $4,000 that Alpha had advanced to him in December 2009. DSAMF ¶ 9, 10; PRDSAMF ¶ 9, 10. After Alpha placed a stop order on the checks, Mr. Dinan contended that he was owed his commissions and that the Separation Agreement was no longer in effect. *Pl.'s Additional Statement of Uncontested Facts* ¶ 4 (Docket # 31); *Def.'s Resp. to Pl.'s Additional Statement of Uncontested Facts* ¶ 4 (Docket # 33).

## II. DISCUSSION

### A. Legal Standard

A party moving for summary judgment is entitled to judgment in its favor only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if its resolution "might affect the outcome of the suit under the governing law." *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006) (quoting *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218–19 (1st Cir. 2004)). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Seaboard Sur. Co.*, 370 F.3d at 218–19). Where parties have filed cross-motions for summary judgment, the Court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st

Cir. 2004) (citation omitted). The presence of cross-motions for summary judgment "does not alter or dilute" the summary judgment standard. *Kunelius v. Town of Stow*, 588 F.3d 1, 8 (1st Cir. 2009). In a breach of contract case where "the contract's terms are ambiguous, contract meaning normally becomes a matter for the factfinder, and summary judgment is appropriate only if the extrinsic evidence is so one-sided that no reasonable person could decide to the contrary. *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783-84 (1st Cir. 2011).

### B. Analysis

From the Court's perspective, both parties have filed hopeless motions for summary judgment. Turning first to Alpha's Counterclaim, it contains three counts: 1) a breach of employment agreement and employee proprietary information and inventions agreement; 2) a breach of the separation agreement and general release; and, 3) a claim for specific performance of the Employment Agreement, Employee Proprietary Information and Inventions Agreement, and Separation Agreement and General Release. *Def.'s Ans., Affirmative Defenses and Countercl.* (Docket # 9). Mr. Dinan's Complaint contains four counts: 1) a violation of 26 M.R.S. § 626; 2) Breach of Contract; 3) Breach of Quasi-Contract; and, 4) Unjust Enrichment. *Compl.* at 1-4. Mr. Dinan has not moved for summary judgment on Count I. *Pl.'s Mot.*

Alpha's motion for summary judgment on Mr. Dinan's Complaint is premised on the viability of the Separation Agreement. *Def.'s Mot.* at 13. Mr. Dinan claims that the Separation Agreement never amounted to an enforceable contract and if it

7

did, Alpha repudiated it by failing to pay Mr. Dinan in accordance with its terms. *Pl.'s Mot.* at 3. The circumstances surrounding the execution of the Separation Agreement are opaque. For example, the parties' statements of fact do not reveal how the Separation Agreement was drafted, and the parties dispute whether Alpha signed the Separation Agreement prior to sending Mr. Dinan a First Amendment to the Separation Agreement. PSUF ¶5-6; DRPSUF ¶ 5-6. At the very least, Mr. Dinan has raised genuine issues of material fact as to whether the Separation Agreement ever became enforceable, and if it did, whether Alpha repudiated the Separation Agreement when it stopped payment on two of the checks it had issued under its apparent terms.

Moreover, even if the Separation Agreement is enforceable, its language contains inherent ambiguity and the intent of the parties in entering the Separation Agreement must be resolved by a factfinder. A significant ambiguity is the Separation Agreement's silence as to the extent of the "taxes and withholding, and deductions" to be subtracted from Mr. Dinan's severance allowance. *See Def.'s Mot.* Attach. 6 (*Separation Agreement*). There is no indication whether the parties intended the "deductions" to include the $4,000 Alpha allegedly advanced to Mr. Dinan in December 2009. This ambiguity is central to the parties' disputed interpretations of the Separation Agreement. Further, the ambiguity is material to whether Alpha's stop order on the checks to account for the $4,000 advance is indicative of a counteroffer, repudiation, or material breach as Mr. Dinan alleges. *See Pl.'s Mot.* In light of this material ambiguity, summary judgment is

inappropriate. *See Farmers Ins. Exch.*, 632 F.3d at 783-84; *OfficeMax, Inc. v. Sousa*, No. 2:09-cv-00631-JAW, 2011 WL 1118486 at *19 (D. Me. Mar. 24, 2011) ("where there is an ambiguity in a written contract, and the record does not completely eliminate the possibility of an issue of fact concerning the intent of the parties, summary judgment is inappropriate") (quoting *Tondreau v. Sherwin-Williams*, 638 A.2d 728, 730 (Me. 1994)).

Mr. Dinan's motion fares no better. It is premised on the invalidity of the Separation Agreement. Again, viewing the Separation Agreement in the light most favorable to Alpha, the Separation Agreement could be valid or more particularly could be valid as to any of Mr. Dinan's claims for unpaid compensation.

The net effect is that because the validity of the Separation Agreement can only be determined by a factfinder, neither party is entitled to summary judgment.

## III.  CONCLUSION

The Court DENIES the Plaintiff's Motion for Summary Judgment as to Counts Two and Three (as Count Three Relates to the Separation Agreement and General Release) of the Defendant's Counterclaim (Docket # 25) and Defendant's Cross-Motion for Summary Judgment (Docket # 28).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2011