UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL DINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00340-JAW |
| | ) | |
| ALPHA NETWORKS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF 2005 PERFORMANCE INCENTIVE PLAN**

Alpha Networks, Inc. asks that a controverted fact be deemed a matter of incontrovertible law. The Court declines.

**I.    STATEMENT OF FACTS**

**A    Background**

Michael Dinan entered into an employment agreement with Defendant Alpha Networks, Inc. (Alpha) in 2005. *First Am. Compl.* ¶ 3 (Docket # 24) (*Am. Compl.*). The employment agreement included a formula for compensating Mr. Dinan based on his performance at the company (the 2005 Plan). *See Def.'s Mot.* in Limine *to Preclude Evidence of the 2005 Performance Incentive Plan* (*Def.'s Mot.*) (Docket # 65) Attach. 1 (*Employment Agreement*). In 2008, Alpha sent Mr. Dinan an email that stated, "[H]ere is your incentive plan for 2008." *Michael Dinan's Objection to Def.'s Mot.* in Limine *to Preclude Evidence of the 2005 Performance Incentive Plan* (Docket # 72) (*Pl.'s Resp.*) Attach. 1 (*2008 Plan*). Alpha attached a document to the email entitled "North America Sales Incentive Plan" (2008 Plan) that outlined formulas

for determining incentive pay. *Id.* Mr. Dinan acknowledges receipt of the 2008 Plan. *Pl's Resp.* at 4-5. He continued in Alpha's employ until March 12, 2010. *Am. Compl.* at ¶ 11.

On August 13, 2010, Mr. Dinan filed this lawsuit, alleging that Alpha owes him outstanding wages for the years 2009 and 2010. *Am. Compl.* ¶¶ 7–16. His allegations base his entitlement to those wages on the 2005 Plan. *Am. Compl.* at ¶¶ 3–6. On June 22, 2011, Alpha moved *in limine* to exclude the 2005 Plan, asserting that the 2008 Plan replaced the 2005 Plan for the years 2009 and 2010. *See Def's Mot.* Attach. 1.

### B. The Parties' Positions

Alpha argues that evidence of the 2005 Plan is "irrelevant under Fed., R. Ev. 401 and would be confusing to the jury and unduly prejudicial to the Defendant as it is contrary to applicable California law . . . ."[1] *Def's Mot.* at 7. Specifically, Alpha is concerned that allowing a jury to consider the 2005 Plan might lead to "the potential for alleged damages in amounts that far exceed what Plaintiff would be entitled to if he is able to prove his case at trial." *Id.*

Alpha contends that the 2008 Plan "changed the terms" of the 2005 Plan outlined in the employment contract and Mr. Dinan "accepted that change" when he "continued to work for Alpha after receiving notice of change." *Id.* at 2. Alpha cites numerous cases for the proposition that "an employer can unilaterally change the

---

[1] Alpha points out that the "employment agreement letter signed by the Plaintiff contains a choice of law provision and is governed by California law." *Def's Mot.* at 3 n.1. According to Alpha, California law should apply because "[t]here is no conflicting Maine law and, therefore, no reason why the law of the contract should not be applied." *Id.* Because the 2005 Plan is admissible under Maine and California law, the Court does not reach this issue.

terms of employment of an at-will employee at any time and an employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Id.* at 3 (quoting *Schachter v. Citigroup, Inc.*, 218 P.3d 262, 269 (Cal. 2009)) (internal quotations omitted). Alpha points out that Mr. Dinan, in his initial request for "payment of the incentive pay he believed he was entitled [for] 2009, . . . referenced the '2008 performance incentive plan' as the applicable … plan to use to calculate his commissions." *Id.* at ¶ 11. Alpha further references excerpts from Mr. Dinan's deposition as evidence that he "was unable to point to any positive evidence that the 2008 Plan had been abandoned at any point or that the 2005 Plan had been reinstated."[2] *Id.* at ¶ 10. According to Alpha, this testimony establishes that Mr. Dinan understood the 2008 Plan to apply to 2009 and 2010.

Mr. Dinan disagrees. He asserts that Alpha lacked authority to unilaterally modify the 2005 Plan. *Pl's Resp.* at 1-2. He contends that language of the employment agreement does not reserve to Alpha the "right unilaterally to change" the terms of the 2005 Plan. *Id.* Moreover, Mr. Dinan argues that California and Maine law "require a new contract, or agreement, for a modification to be legally

---

[2] Referencing excerpts from Mr. Dinan's deposition, Alpha asserts that "[t]he most [Mr. Dinan] can say is that there might have been some discussions [with Alpha management] that a new [incentive] plan could be implemented at some point in 2009." *Def.'s Mot.* at 7–8. While "not agree[ing] such discussions took place," Alpha argues that "[s]uch nebulous discussions could not, as a matter of law, create a new, binding compensation scheme where the 2008 Plan had been promulgated in writing to Mr. Dinan in March of 2008 and accepted by Mr. Dinan by virtue of his continued employment after receiving that notice." *Def's Mot.* at 7. The disposition of this motion depends on Alpha proving as a matter of law that Mr. Dinan was bound by the 2008 Plan in 2009 and 2010; it does not depend upon Mr. Dinan definitively proving some other compensation structure was in place. Accordingly, the Court need not decide whether the alleged discussions could, as a matter of law, modify the 2005 employment contract.

3

effective." *Id.* at 3. According to Mr. Dinan, the 2008 Plan "itself indicate[s] it was for 2008, and not for any other years." *Id.* at 4. He bases this conclusion on the language of the email communicating the 2008 Plan terms as well as the title of the Plan itself, "North America Sales Incentive Plan 2008." *Id.* at 4-5. Mr. Dinan further cites deposition testimony from his boss, Alpha general manager Hander Hsing, to support his contention that the 2008 Plan only applied to 2008. *Id.* at 5–8. According to Mr. Dinan, "it is clear from Mr. Hsing's answers that there was no announced incentive compensation plan for 2009 and 2010, in writing or otherwise." *Id.* at 7.

## II. DISCUSSION

### A. Legal Standard

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *see also United States v. Maldonado-Garcia*, 446 F.3d 227 (1st Cir. 2006). Evidence is relevant if it "tend[s] to prove the matter sought to be proved[]." FED. R. EVID. 401 advisory committee's note. The Federal Rules presume that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." FED. R. EVID. 402. Together, "Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the

4

Rules provide otherwise." *Huddleston v. U.S.*, 485 U.S. 681, 687 (1988). District courts in the First Circuit "enjoy wide latitude in passing upon the relevance of evidence." *Maldonado-Garcia*, 446 F.3d at 231 (citing *United States v. Norton*, 26 F.3d 240, 243 (1st Cir. 1991)).

B. Analysis

Alpha's motion seeks to resolve as a matter of law which compensation plan determined Mr. Dinan's entitlement to wages in 2009 and 2010. Mr. Dinan alleges Alpha owes him outstanding wages for the years 2009 and 2010 based on the 2005 Plan. *First Am. Compl.* (Docket # 24) (*Am. Compl.*). Alpha contends that plan was terminated when it was replaced by the 2008 Plan. Alpha asserts that "an employer can unilaterally change the terms of employment of an at-will employee at any time and 'an employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment as accepted the changed terms and conditions." *Def.'s Mot.* at 3 (quoting *Schachter*, 281 P.3d at 269 (internal quotation marks omitted)). Accepting Alpha's characterization of the law may establish that Mr. Dinan was bound by the 2008 performance incentive plan in 2008.[3] However, the relevant time period of this dispute is 2009 and 2010. *See First Am. Compl.* The Court is not prepared to accept as a matter of law that the 2008 performance incentive plan applied in 2009 and 2010.

It is not at all clear that the 2008 Plan was intended to extend beyond 2008. First, the plan refers repeatedly to 2008 and no other year. It was titled "North

---
[3] Mr. Dinan disputes that he was ever bound by the 2008 plan.

5

America Sale Incentive Plan 2008" and referred to Mr. Dinan's "2008 Sales Quota" and "2008 Sales Margin." *2008 Plan*. It mentions no other year and gives no indication that it would apply beyond 2008. Furthermore, the email Alpha sent Mr. Dinan to inform him of the 2008 Plan stated, "here is your incentive plan for 2008." *Id.* In contrast, the language in the 2005 employment agreement contemplates an ongoing plan. It uses phrases like "beginning Q3 2006," "per year," and "[a]chievement of yearly quota must be by end of each calendar year." *Def.'s Mot.* Attach. 1 (*2005 Plan*). The 2005 employment agreement demonstrates that, if it wishes to do so, Alpha is fully capable of making it clear that a compensation plan applies to multiple years. This same clear language does not appear in the 2008 Plan.

Adding to the ambiguity is Mr. Hsing's testimony. He testified there was no incentive plan for 2009 and it was "just pending." *Pl.'s Resp.* at 5 (citing Attach. 2 (*Hsing Dep.*)). He further testified that Alpha did not have an assigned incentive program in 2009 because it was a "very bad year." *Hsing Dep.* 40:17–18. As it is not clear that Alpha intended the 2008 Plan to apply in 2009 and 2010, it is not settled that Mr. Dinan continued his employment in those years with notice that the 2008 plan applied. *See Schacter*, 218 P.3d at 269 ("An employee who continues in the employ of the employer after the employer has *given notice* of changed terms or conditions of employment has accepted the changed terms and conditions" (emphasis added)).

6

Because Alpha is unable to establish as a matter of law that the 2008 Plan applied in 2009 and 2010, evidence of the 2005 Plan is relevant. The compensation structure applicable to 2009 and 2010 is a disputed issue of fact, and the course of dealing between Mr. Dinan and Alpha throughout his employment relationship, including the 2005 Plan, may help determine the wages he was owed in those years. Moreover, Mr. Dinan's claims lie in equity in addition to contract. As such, if the parties are unable to prove a contractual compensation structure in 2009 and 2010, the 2005 Plan would be relevant to their reasonable expectations. Of course, Alpha will be entitled at trial to present evidence that the 2005 was replaced by the 2008 Plan. It will be the province of the jury to resolve these competing factual assertions.

### III. CONCLUSION

The Court DENIES Alpha Network, Inc.'s Motion *in Limine* to Preclude Evidence of the 2005 Performance Incentive Plan.

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2011