UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| MICHAEL DINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00340-JAW |
| | ) | |
| ALPHA NETWORKS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CHOICE OF LAW**

After a federal jury awarded Michael Dinan damages of $70,331.93 in quantum meruit in a lawsuit he brought against his former employer, Alpha Networks, Inc., the parties filed post-trial briefs, requesting the Court to (1) determine whether Maine or California law triggered wage payment penalty provisions and would entitle Mr. Dinan to an increased damages award and attorney's fees, and (2) to clarify, in the event Maine or California wage penalty provisions applied, what damages amount pre-judgment interest would run on. The Court concludes that California law applies to the jury's quantum meruit award and that Mr. Dinan is entitled under California law to an additional award of thirty days wages. Further, the Court orders Alpha to pay Mr. Dinan pre-judgment interest according to Maine Revised Statutes, title 14, section 1602-B.

## I.  STATEMENT OF FACTS

### A.  The Lawsuit

Michael Dinan filed an amended complaint with the Court on November 8, 2010 against his former employer, Alpha Networks, Inc. (Alpha), for violation of Maine's Timely and Full Payment Wages Law (Maine Revised Statutes, title 26, section 626), breach of contract, breach of quasi-contract, and unjust enrichment. *Pl.'s First Am, Compl.* (ECF No. 24) (*Am. Compl.*).   On the third day of trial, the jury returned a verdict and found:

1) That Mr. Dinan had not established that Alpha and he entered into an employment agreement in which Alpha promised to pay him commissions for 2009 and 2010;

2) That Alpha and Mr. Dinan had entered into a valid Separation Agreement and General Release;

3) That Alpha repudiated or breached the Separation Agreement and General Release;

4) That Mr. Dinan had established that he is entitled to damages under quasi-contract;

5) That the reasonable value of the services that Mr. Dinan had established he was entitled to receive from Alpha under quasi-contract was $70,331.93;

6) That Alpha had failed to pay Mr. Dinan his wages, including commissions; and

7) That the value of thirty days wages, including commissions, for Mr. Dinan was $7,799.67.

2

*Jury Verdict* (ECF No. 97).

On September 1, 2011, Mr. Dinan filed a motion for the Court to treble the damages and add costs, interest, and attorney's fees to the judgment pursuant to Maine Revised Statutes, title 26, section 626 or to certify the question to the Maine Supreme Judicial Court as to whether Maine's Timely and Full Payment of Wages Law applies to the reasonable value of an employee's services under quantum meruit. *Pl. Michael Dinan's Mot. that the Ct. Treble the Damages and Add Costs, Interest and Att'y's Fees to the J. in Accordance with 26 M.R.S.A 626, or in the Alternative to Certify This Issue to the Maine Supreme Judicial Court in Accordance with 4 M.R.S.A. [§] 57* (ECF No. 106) (*Pl.'s Mot.*). Alpha responded on September 21, 2011. *Alpha Networks' Obj. to Pl.'s Mot. that the Ct. Apply Maine Law or Certify the Issue to the Maine Supreme Judicial Ct.* (ECF No. 108) (*Def.'s Opp'n*). On September 29, 2011, Mr. Dinan replied to Alpha's opposition. *Michael Dinan's Reply Brief to Alpha Networks' Obj. to Pl.'s Mot. that the Ct. Apply Maine Law or Certify the Issue to the Maine Supreme Judicial Ct.* (ECF No. 109) (*Pl.'s Reply*).

On April 23, 2012, the Court issued an Order certifying Mr. Dinan's question—whether Maine Revised Statutes, title 26, section 626, applies to an employee's quantum meruit damages award—to the Maine Law Court. *Order on Pl. Michael Dinan's Mot. that the Ct. Treble the Damages and Add Costs, Interest, and Att'y's Fees to the J. in Accordance with 26 M.R.S.A. [§] 626, or in the Alternative Certify this Issue to the Maine Supreme Judicial Court in Accordance with 4 M.R.S.A. [§] 57* (ECF No. 110) (*Order*). On February 21, 2013, the Maine Law

3

Court issued an opinion concluding that Maine Revised Statutes, title 26, section 626, may apply to employees' quantum meruit awards if the award is for services of the type for which an employee would have been due wages:

> Whether a quantum meruit recovery activates the penalty provision of section 626 depends on the first element of a quantum meruit claim: the services rendered.  If those services are of the type for which an employee would have been due wages, then application of section 626 to a recovery in quantum meruit is appropriate.  If not, section 626 would not apply.

*Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 2, 60 A.3d 792, 794.

On March 22, 2013, the Court held a telephone conference in which Mr. Dinan and Alpha agreed that given the Law Court's decision, the Court should decide which state's law applies to this case.  *Minute Entry* (ECF No. 114).  On March 28, 2013, Alpha filed a memorandum on the choice of law question. *Def.'s Mem. on Miscellaneous Damages Issues Raised by the Choice of Law Question Pending Before the Court* (ECF No. 115) (*Def.'s Damages Mem.*).  On April 2, 2013, Mr. Dinan filed a memorandum regarding the appropriate choice of law, damages, interest, and attorney's fees.  *Pl.'s Mem. of Law on Damages, Interest, and Att'y's Fees* (ECF No. 116) (*Pl.'s Damages Mem.*).

## B.    The Underlying Dispute[1]

Mr. Dinan worked as a salesman for Alpha, a California corporation, from November 10, 2005 until March 12, 2010.  *See Order* at 2; *Def.'s Opp'n* at 3.  On November 10, 2005, Mr. Dinan signed an Employment Agreement, which contained a California choice of law provision.  *Order* at 2-3; *see Def.'s Answer, Affirmative*

---

[1]    The facts are laid out in a manner consistent with the jury verdict.

*Defenses and Countercl.* (*Def.'s Answer*) Attach 1, *Employment Agreement* (ECF No.

9-1).  The choice of law provision stated:

> The terms and conditions contained in this offer letter supersede any other representations made to you, whether oral or written and cannot be changed without the express written approval of an Officer of the Company.  The terms of this letter shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California.  Any term or provision of this letter agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

*Employment Agreement* ¶ 9.  The agreement also included provisions concerning

Mr. Dinan's base salary and incentive pay.  *Order* at 3; *Employment Agreement* ¶ 2.

Alpha initiated a new bonus plan in 2008, which reduced the amount Mr.

Dinan and other employees received in incentive pay.  *Order* at 3.  The lower

bonuses from the plan caused discontent among the salespeople, including Mr.

Dinan.  *Id.*  In 2009, Alpha promised to adopt a new incentive plan and Mr. Dinan

continued to work for Alpha based upon that promise.  *Id.*  Yet, despite periodic

assurances that it would adopt a new incentive plan for 2009 or 2010, Alpha did not

institute a new plan.  *Id.*  In recognition of its failure to follow through on its

promise, Alpha paid Mr. Dinan $4,000 in December 2009.  *Id.*

On March 12, 2010, Mr. Dinan resigned and signed a Separation Agreement

and General Release whereby Alpha promised to pay him a severance allowance of

$26,666.67.  *Id.*; *Def.'s Answer* Attach 3, *Separation Agreement and General Release*

(ECF No. 9-3) (*Sep. Agmt.*).   That same day, Alpha issued three checks to Mr. Dinan: two checks totaling $14,007.97 and a third check in the amount of $5,434.71. *Order* at 3.   The first two checks were for the $26,666.67 severance payment, which was reduced to $14,007.97 after taxes, and the third check was intended to cover all wages, commissions, overtime, bonuses, and accrued unused vacation time or paid time-off that he earned during his employment.   *Id.*; *see Aff. of Michael Dinan* Attach 1, *Severance Allowance Checks and Am. Separation Agreement* at 1 (ECF No. 17-1) (*Checks & Am. Sep. Agmt.*).

After the checks were issued, Alpha realized that it did not deduct the $4,000 payment it made to Mr. Dinan in December 2009 from the proposed severance. *Order* at 3.   Contrary to Mr. Dinan's interpretation, Alpha considered the $4,000 payment to be an advance, not a gift.   *Id.*   Accordingly, on March 12, 2010, Alpha e-mailed Mr. Dinan and told him not to deposit the checks.   *Id.*   Alpha then e-mailed Mr. Dinan a revised Separation Agreement and General Release, which reduced the gross severance payment of $26,666.67 ($14,007.97 after taxes) by $4,000.   *Id.* at 3-4.   Alpha also placed a stop payment on the two checks totaling $14,007.97 and e-mailed Mr. Dinan a formal First Amendment to the Separation Agreement and General Release for his signature on March 15, 2010.   *Id* at 4.; *see Checks & Am. Sep. Agmt.* 2-4.

Mr. Dinan refused to sign the amended Separation Agreement and demanded full payment of the $26,666.67 severance.   *Order* at 4.   He e-mailed Alpha on April 4, 2010 and April 14, 2010 demanding payment under their original agreement.   *Id.*

6

On May 5, 2010, Alpha's attorney sent Mr. Dinan a letter demanding that he sign the amended Separation Agreement and that he provide certain customer information. *Id.* Alpha's lawyer also threatened to sue Mr. Dinan for damages and promised to pay the amended severance "in due course" after Alpha received the agreement and requested information. *Id.* On June 10, 2010, Mr. Dinan's attorney sent a letter to Alpha citing Maine Revised Statutes, title 26, section 626 and demanding payment under the original Separation Agreement within fourteen days. *Id.* Shortly thereafter, on July 21, 2010, Mr. Dinan filed a four-count complaint in Maine state court, which was later removed to this Court by Alpha. *See Notice of Removal* Attach 1, *State Court Compl.* (ECF No. 1-1).

## II.   THE PARTIES' POSITIONS[2]

### A.   Mr. Dinan's Motion

Mr. Dinan argues that because the jury found that the terms of the parties' November 10, 2005 Employment Agreement regarding commission payments, or any 2008 modification of such terms, did not control his commission payments for 2009 or 2010, the agreement's California choice of law provision does not govern the commissions currently owed to him. *Pl.'s Mot.* at 4. As there is no controlling choice of law provision, Mr. Dinan argues that general choice of law principles should apply and the Court should follow its choice of law analysis in *Burr v. Melville Corp.*, 868 F. Supp. 359, 363 (D. Me. 1994), which applied the Restatement (Second) Conflict of Laws, section 188. *Id.* In *Burr*, the Court listed five "contacts"

---

[2]     Both parties refer the Court to the choice of law arguments they made in their September 2011 briefs regarding Mr. Dinan's motion for treble damages and attorney's fees. *See Pl.'s Damages Mem.* at 1; *Def.'s Damages Mem.* at 1 n.1.

that should be considered when determining which state has the more significant relationship to the transaction: "(1) place of contracting; (2) place of negotiation; (3) place of performance; (4) where the subject matter of the contract is located; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Burr*, 868 F. Supp. at 363 (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 187 (1971) (RESTATEMENT)).

Under the contacts analysis employed in *Burr,* an implied contract case, Mr. Dinan argues that except for the third factor, most of the choice of law "contacts" factors do not favor either party's proposed governing law. *Id.* at 4-5.  Arguing that the first, second, fourth and fifth factors are not determinative, Mr. Dinan cites his residence in Maine while working for Alpha, Alpha's incorporation in California, the place of negotiation for the quasi-contract both in Maine and California, and the absence of a concrete location for the subject matter of their quasi-contract. *Id.* at 5.

Regarding the third contacts factor—the place of performance—Mr. Dinan asserts that the performance at issue is his sales of products to Alpha's customers, which "almost exclusively took place in the [s]tate of Maine." *Id.* at 5-6.  Because he only went to California a couple of times per year for meetings at Alpha's headquarters and left Maine once a month to meet with out-of-state clients, Mr. Dinan argues that the third factor mandates that Maine law—specifically Maine Revised Statutes, title 26, section 626—should apply to the jury award. *Id.* at 6.

### B.    Alpha's Opposition

Alpha argues that the California choice of law provision contained in the Employment Agreement continues to govern the relationship between the parties and applies to Mr. Dinan's 2009 and 2010 commission payments.  *Def.'s Opp'n* at 2-3.  Alpha points out that the 2005 Employment Agreement specifically "states that it 'form[s] the complete and exclusive statement of your employment with the Company.'"  *Id.* at 5; *Employment Agreement* ¶ 8.  Given the explicit language in the agreement and Mr. Dinan's failure to point to any caselaw, Alpha asserts that Mr. Dinan's argument that the jury's no contract finding removed the choice of law provision from his 2009 and 2010 commissions is unfounded.  *Id.* at 5-6.  Alpha notes:

> Even after 2008, when the jury found that the Commission structure going forward was no longer something to which the parties agreed, the parties continued to operate as if the Employment Agreement remained in full force and effect.  Both sides took positions in the lawsuit relying on the terms of the Employment Agreement.  There was no evidence of any intent that the entire agreement be without force and effect if the parties disagreed over the calculation of the commissions.

*Id.* at 6.  Alpha cites *Olnick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1299 (Cal. App. 2006), for the proposition that where a choice of law provision does not contain any limiting language, it will "'encompass[ ] all causes of action arising from or related [to] the Agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement of the legal relationships it creates.'"  *Id.* at 7.  Alpha argues that the clear intent of the parties was to have California law govern all the terms of Mr. Dinan's employment and that this

9

intent—memorialized in the Employment Agreement—remains effective even after the parties failed to reach an agreement concerning Mr. Dinan's 2009 and 2010 commission payments. *Id.* at 7-8.

Because there is a relevant choice of law provision, Alpha contends that the Court should apply the Restatement (Second) Conflict of Laws section 187(2) rather than section 188. *Id.* at 3, 3 n.1. Alpha maintains that if section 188 were to apply, it would not assist the Court's analysis because four out of the five contacts factors are neutral. *Id.* at 3 n.1. Under a section 187(2) conflict of laws analysis, Alpha argues that (1) California has a substantial relationship to the parties given that Alpha is incorporated in California and (2) California law does not conflict with a fundamental policy of the state of Maine as it "furthers the same policy but with a lesser remedial measure." *Id.* at 3-4. Alpha urges the Court to follow the Maine Law Court's decision in *Schroeder v. Rynel, Ltd.*, *Inc.*, 1998 ME 259, 720 A.2d 1164, and to decline to use Maine law simply because it provides more relief for Mr. Dinan than California law. *Id.* at 4.

Finally, Alpha argues that under California law Mr. Dinan is not entitled to waiting time damages pursuant to California Labor Code, section 203 because there was a "good faith dispute" between the parties concerning whether Mr. Dinan was entitled to the $4,000 and to commissions based on the Employment Agreement's original commission formula. *Id.* at 8-10. Thus, Alpha argues that the jury's $70,331.93 verdict does not trigger liquidated damages. *Id.* at 10. Moreover, the jury's finding that there was no agreement concerning Mr. Dinan's 2009 and 2010

commissions also shows that Alpha did not willfully violate California law and confirms that waiting time damages would be inappropriate.   *Id.* at 10-11. Similarly, if the Court decides to apply Maine law, Alpha asserts that Mr. Dinan would not be entitled to treble damages and attorney's fees under Maine Revised Statutes, title 26, section 626 because there was a bona fide dispute regarding whether Alpha owed Mr. Dinan any wages.  *Id.* at 11-13.

### C.    Mr. Dinan's Reply

First, Mr. Dinan argues that the language of the California choice of law provision proves that it only applied to "the terms" of the Employment Agreement and that "[t]he contract did not provide that the terms of any other cause of action would be governed by California law."  *Pl.'s Reply* at 2.  Accordingly, he claims that *Olinick* is unpersuasive because it is factually distinguishable from this case and because Maine law governs the conflict of law question.  *Id.* at 2 n.1.  Next, Mr. Dinan asserts, "[t]he jury's answer of 'no' to [ ] question [1 on the verdict form] clearly and unequivocally meant that the November 10, 2005 agreement between Dinan and Alpha, which governing many issues of their employment relationship for which Dinan never brought suit, did not govern the payment of commissions from Alpha to Dinan for the years 2009 and 2010."  *Id.* at 3.  Thus, he argues that "[t]he selection of California law would not apply to an action which neither interpreted nor enforced the contract which contained the choice of law provision." *Id.* at 4.

Second, Mr. Dinan claims that the bona fide dispute exception Alpha cites as barring liquated damages under Maine Revised Statutes, title 26, section 626 is inapplicable because it is a defense provided under a different statute—Maine Revised Statutes, title 26, section 626-A. *Id.* at 6. Because Mr. Dinan sued under section 626, he insists that section 626-A has no bearing on this case. *Id.* Finally, Mr. Dinan claims that there is no requirement under section 626 that the wages owed must be owed pursuant to an agreement or contract. *Id.* at 7. "Instead, the [Maine] Legislature made the key terms [in section 626] whether an employer did not pay an employee wages within a reasonable period of time of the employment relationship ending." *Id.*

## III. DISCUSSION

### A. Legal Standard

The first step in conducting a choice of law analysis is to determine whether a true conflict exists between the substantive laws of the interested jurisdictions. *Robidoux v. Muholland*, 642 F.3d 20, 22-23 (1st Cir. 2011); *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004). If a true conflict exists, the Court proceeds to the second step and applies the conflict of law rules of the state in which it sits—in this case, Maine law—to determine which state's substantive laws govern the lawsuit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Reicher*, 360 F.3d at 4.

### B.      Maine and California Law:  A True Conflict?

The states of Maine and California have wage payment statutes that require employers to promptly pay an employee his or her wages.  26 M.R.S. § 626; CAL. LAB. CODE § 203.  The penalties for failure to promptly pay, however, are markedly different.  In Maine, the tardy employer must not only pay the employee the amount of the unpaid wages but also "an additional amount equal to twice the amount of those wages as liquidated damages."  26 M.R.S. § 626.  Here, with the jury finding that the reasonable value of Mr. Dinan's services was $70,331.93, Alpha would be subject to an additional award of $140,663.86 if Maine law applies, for a total verdict of $210,995.79.[3]  *See Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶ 2, 820 A.2d 582, 583 (affirming award under 26 M.R.S. § 626 of $82,500 on unpaid vacation pay of $27,500).

By contrast, California law provides that if an employer willfully fails to pay "any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  CAL. LAB. CODE § 203(a).  Here, with the jury finding that thirty days of Mr. Dinan's wages equaled $7,499.67, the total amount of Mr. Dinan's damages would be $77,831.60.

---

[3]      Following the Law Court's decision in *Dinan*, Alpha conceded that if Maine law applies, the jury award would be subject to the treble damages provision of 26 M.R.S. § 626, *Def.'s Opp'n* at 1-2. The Court agrees with Alpha.  The jury found that the damages in quasi-contract were the value of the services Mr. Dinan provided Alpha, and the Court views those services as "the type for which an employee would have been due wages."  *Dinan*, 2013 ME 22, ¶ 2, 60 A.3d at 795.

In the First Circuit, "when the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls."  *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005).  However, in *Turcotte v. Ford Motor Company*, 494 F.2d 173 (1st Cir. 1974), the First Circuit concluded that a true conflict existed where the outcome of a choice of law question and the application of the prevailing state's law would have resulted in vastly different damages awards.  *See id.* at 177 (addressing a jury verdict of $500,000, Massachusetts law capped damages at $50,000; Rhode Island law contained no cap).  Here, the Court concludes that the difference between $77,831.60 potentially available under California law and $210,995.79 under Maine law is sufficiently significant to present a true conflict.

## C.   The Fundamental Law of Maine

Assuming California law could apply, one question is whether under Maine law, a court sitting in Maine, should apply the California statute with its less generous statutory remedies.  Under the Restatement, a court will not enforce a contractual choice of law provision if the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . ."  RESTATEMENT § 187(2)(b).

The Maine Supreme Judicial Court answered this question in *Schroeder v. Rynel, Ltd.*, 1998 ME 259, 720 A.2d 1164.  In *Schroeder*, the Maine unpaid employee protested the application of the stingier remedies in the state of Delaware

14

late pay statute, asserting that the lesser remedies violated the fundamental policy of the state of Maine.  *Id.* 1998 ME 259, ¶¶ 11-12, 720 A.2d at 1166-67.  Unlike the multiplied liquidated damages in Maine, the Delaware statute authorized an unpaid employee to receive "liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller", a civil penalty of not less than $1,000 nor more than $5,000 for each violation, court costs and attorney's fees.  DEL. CODE. ANN. tit. 19, §§ 1103(b), 1112(a), 1113(c).  The Maine Supreme Judicial Court concluded that Maine would not "refuse to apply Delaware law merely because a different *result* would be reached pursuant to Maine law."  *Schroeder*, 1998 ME 259, ¶ 12, 720 A.2d at 1167 (emphasis in original).  The *Schroeder* Court concluded that the application of Delaware law to the Maine plaintiff's claim did not violate "a fundamental policy of Maine."  *Id.*  Applying *Schroeder* to the facts in this case, the Court concludes that, even though the California late pay statute provides for less generous remedies than the Maine statute, the California statute does not violate the fundamental policy of the state of Maine.

### D.    Applicability of the California Choice of Law Provision

The parties fundamentally disagree about whether the California choice of law provision in the Employment Agreement controls the jury's quantum meruit damages award.  Mr. Dinan argues that the contractual choice of law provision does not extend to the jury's verdict and that Maine Revised Statutes, title 26, section

15

626 should apply to his damages award and entitle him to treble damages and attorney's fees. *Pl.'s Mot.* at 6-13. Alpha asserts that the contractual choice of law provision stands and that California Labor Code section 203 applies to this case and precludes any liquidated damages award available to Mr. Dinan under Maine law. *Def.'s Opp'n* at 8-11.

There are two strands of authority on the question of whether a choice of law provision in a contract extends to claims in quasi-contract. One line of authority — reflected in New York and Pennsylvania law — construes choice of law provisions narrowly and limits them to claims arising out of the contract; a second line of authority — reflected in California law — extends contractual choice of law provisions to all claims arising out or related to the contract. In *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012), the district court confronted a similar issue and enforced the contract's New York choice of law provision because, in California, unlike New York, "all claims 'arising from or related to' a contract are covered by the contract's choice-of-law clause, regardless of whether they are characterized as contract or tort law claims." *Id.* at 1036 (quoting *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470 (Cal. 1992)) (describing how, unlike California law, choice of law provisions in New York law apply only to claims based on rights conferred by the agreement and do not apply to claims of promissory estoppel, quasi-contract, or tortious breaches of contractual duties); *Dos Beaches, LLC v. Mail Boxes Etc., Inc.*, No. 09CV2401-LAB (RBB), 2012 U.S. Dist. LEXIS 18619, at *47-51 (S.D. Cal. Feb. 15, 2012); *Grimm v. Discover Fin. Servs.*, No. 08-

747, No. 08-832, 2008 U.S. Dist. LEXIS 89709, at *23-25 (W.D. Pa., Nov. 4, 2008) (describing the narrow view in Pennsylvania).

In the context of this case, since the jury determined that Alpha did not breach the Employment Agreement that contains the choice of law provision, it is significant which of these two lines of authority Maine has adopted.  If the choice of law provision applies to the quasi-contractual damages in this case, the Court will apply the California wage payment statute.  *See id.*; *Nedlloyd Lines B.V.*, 3 Cal. 4th at 470 ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to the agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates").  If the choice of law provision does not apply to quasi-contractual damages, the Court would apply the general choice of law rules to determine which law to apply.

As noted earlier, Maine choice of law rules control the answer to this question.  *Klaxon*, 313 U.S. at 496; *Reicher*, 360 F.3d at 4.  Unfortunately, there is limited authority in Maine as to which of the two lines of authority Maine has adopted or would enforce.  It is true that Maine will enforce a contractual choice of law provision.  *Stenzel v. Dell, Inc.*, 2005 ME 37, ¶¶ 6-8, 870 A.2d 133, 139.  In *Schroeder*, the Maine Law Court added several conditions consistent with the Restatement and noted that it will enforce a contractual choice of law provision so long as: the chosen state (1) has a substantial relationship to the parties or the

17

transaction, (2) there is a reasonable basis for the parties' choice, and (3) the law of the chosen state is not contrary to the fundamental policy concerns of the state of Maine. 1998 ME 259, ¶ 8, 720 A.2d at 1166. With these principles in mind, this Court would have little difficulty applying California law to a breach of the Employment Agreement. The problem is that the jury found that Alpha did not breach the Employment Agreement and the damages are in quasi-contract. The parties have not cited any relevant authority on this issue and the Court could not find a Maine case directly on point.[4]

The District of New Hampshire recently addressed a similar issue in *Stonyfield Farm, Inc. v. Agro-Farma, Inc.*, No. 08-cv-488-JL, 2009 U.S. Dist. LEXIS 94217 (D.N.H. Oct. 7, 2009). In *Stonyfield Farm*, the question was whether a contractual choice of law provision applied to tort claims. *Id.* at *11. After reviewing the uncertain state of the law on this issue, the district court quoted Judge Posner of the Seventh Circuit:

> One can, it is true, find cases that say contractual choice of law provisions govern only contractual disputes and not torts. But what the cases actually hold is that such a provision will not be construed to govern torts as well as contract disputes unless it is clear that this is what the parties intended. When it is clear, the provision is enforced.

*Id.* at *13 (quoting *Kuehn v. Childrens Hosp.*, 119 F.3d 1296, 1302 (7th Cir. 1997)).

Another factor the *Stonyfield Farm* Court discussed was the "nature of the tort claims at issue — and the extent, if any, to which they hinge upon the

---

[4]     The closest Maine case that the Court found is *Cordija v. Athenahealth, Inc.*, No. BCD-CV-11-30, 2011 Me. Super. LEXIS 229, at *19-21 (Nov. 17, 2011) in which the Superior Court enforced a Delaware choice of law provision in an employment agreement. However, in *Cordija*, the parties agreed that Delaware, not Maine law applied.

contract." *Id.* at *14.  The district court noted that in *Northeast Data Systems v. McDonnell Douglas Computer Systems*, 986 F.2d 607, 609 (1st Cir. 1993), the First Circuit applied a contractual choice of law provision to an unfair trade practices claim, observing that the unfair trade practices claim in that case was an embroidered contract claim. *Id.* (citing *Northeast Data Systems*, 986 F.2d at 609).

Applying the *Stonyfield Farm* analysis, the Court looks first to the language of the choice of law provision to determine the parties' intent.  The choice of law provision stated:

> The terms and conditions contained in this offer letter supersede any other representations made to you, whether oral or written and cannot be changed without the express written approval of an Officer of the Company.  The terms of this letter shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California.  Any term or provision of this letter agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

*Employment Agreement* ¶ 9.  It is true that this contract repeatedly emphasizes that its choice of law provisions apply to "this letter" and here, the jury found that Alpha did not breach the provisions of the letter.  *See id.*; *Jury Verdict*.  Furthermore, there is no language in the agreement that more broadly extends the choice of law provision.  By contrast, in *Northeast Data Systems*, the First Circuit construed a choice of law provision that applied to "[t]his Agreement and the rights and obligations of the parties hereto."  986 F.2d at 609.

The difficulty is that the dispute between Mr. Dinan and Alpha arose out of their employment relationship and a quasi-contract is an embroidered contract claim.  *See Paffhausen v. Balano*, 1998 ME 47, ¶ 6 n.3, 708 A.2d 269, 271 n.3 (confirming that recovery in quantum meruit is based upon contract principles). Indeed, the letter agreement between Mr. Dinan and Alpha included provisions related to incentive pay, which is the general subject of the current dispute between the parties.

On balance, though not without some hesitation, the Court concludes that the choice of law provision in the Employment Agreement applies to the parties' current dispute.   Even though the theory is quasi-contract, the essence of Mr. Dinan's dispute with Alpha is a dispute about the terms and conditions of the employment relationship and the parties agreed and intended that disputes about their employment relationship would be governed by California law.  *See Employment Agreement* ¶ 9.  By applying the choice of law provision, the Court is enforcing the terms of the agreement between the parties.

### E.    Mr. Dinan's Damages Judgment

#### 1.    Waiting Time Penalties Under California Labor Code Section 203

California Labor Code section 203 entitles employees to thirty days pay on top of the value of their unpaid wages if the employer willfully fails to pay their wages and does not present a good faith dispute defense.  *See* CAL. LAB. Code § 203; CAL. CODE REGS. tit. 8, § 13520.   The jury awarded Mr. Dinan $70,331.93 for the "reasonable value of the services that [he] established he is entitled to receive from

[Alpha] under quasi-contract." *Jury Verdict* ¶ 7.  It also determined that the value of thirty days wages, including commissions, for Mr. Dinan totaled $7,799.67.  *Id.* ¶ 9.   Given the California Legislature's definition of "willful" in California Code Regulations, title 8, section 13520, the Court may only award Mr. Dinan waiting time penalties of $7,799.67 if Alpha "intentionally fail[ed] to pay wages to [Mr. Dinan] when those wages [were] due." CAL. CODE REGS. tit. 8, § 13520.  However, if Alpha establishes that there was a "good faith dispute" concerning whether any wages were owed to Mr. Dinan, the Court may not award waiting penalties.  *Id.* §§ 13520, 13520(a).

Here, there is no dispute concerning Mr. Dinan's right to an award of at least $70,331.93.  *Def.'s Damages Mot.* ¶¶ 2, 7.  However, Alpha asserts that Mr. Dinan is not entitled to $7,799.67 in waiting time penalties because the jury did not explicitly find that Alpha's failure to pay Mr. Dinan's wages was willful.  *Id.* ¶ 7. The Court disagrees.   Under California regulations, a "willful failure to pay" is defined as an employer's intentional failure to pay wages to an employee when owed.  CAL. CODE REGS. tit. 8, § 13520; *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (Cal. App. 2008) ("The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done").

The jury in this case found that Alpha had "repudiated or breached the Separation Agreement & General Release". *Jury Verdict* at 2.  In order to make this finding, the Court must assume that the jury followed its instructions, which

first instructed the jury that Alpha had affirmatively claimed that in failing to pay Mr. Dinan, it was acting in accordance with the terms of its Separation Agreement. *Jury Instructions* at 12.  In response, Mr. Dinan asserted that Alpha had repudiated and materially breached the Separation Agreement and therefore he was not bound by its terms. *Id.* at 12-13.  The Court instructed the jury:

> Repudiation of an agreement occurs when one party refuses to perform and communicates that refusal directly and without qualification to the other party.  It consists of an outright refusal by a party to perform a contract or its conditions.

*Id.* at 13.  The jury's conclusion that Alpha breached the Separation Agreement by its outright refusal to comply with its terms is consistent with a determination that it intentionally refused to pay Mr. Dinan.

Alpha claims that the parties' disagreement over the $4,000 was the reason it sought to amend the parties' original Separation Agreement and eventually breached the Separation Agreement.  *Def.'s Opp'n* at 8-10.  Under section 13520(a), the fact that the defense was "ultimately unsuccessful" does not "preclude a finding that a good faith dispute did exist."  CAL. CODE REGS. tit. 8 § 13520(a); *see Jury Verdict* ¶ 4.  According to *FEI Enterprises, Inc. v. Yoon*, if there is no evidence of bad faith and the employer's good faith dispute is not frivolous or unreasonable, the employer cannot be liable for waiting time penalties.  194 Cal. App. 4th 790, 802 (Cal. App. 2011); *see Amaral*, 163 Cal. App. 4th at 1201-04.

There are two problems with Alpha's position.  First, whether it acted in good faith in refusing to pay Mr. Dinan is a defense that Alpha never presented to the jury in this case.  *See Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-

0982 EMC, 2013 U.S. Dist. LEXIS 58868, at *30 (N.D. Cal. Apr. 24, 2013) (noting that the Court could not say, as a matter of law, that "Defendants' good faith defense is not viable"). Alpha never presented this defense to the jury and therefore it is deemed waived.

Moreover, whether an employer's refusal to pay is in good faith is a mixed question of law and fact. In *Amaral*, the California Appellate Division discussed "willfulness" as a mixed question of law and fact and deferred to the trial judge's factual findings in concluding that the employer acted in good faith. 163 Cal. App. 4th at 1203. Here, Alpha failed to obtain a jury determination as to whether it was acting in good faith. The parties have a Seventh Amendment right to a jury trial and this Court may not make factual findings now in lieu of the jury. *See* U.S. CONST. amend. VII.

### 2.    Pre-judgment Interest

With respect to interest on the jury's award, Mr. Dinan asserts that he is entitled to "pre-judgment interest pursuant to Maine law from the date of filing the Complaint, plus costs allowed by law, and post-judgment interest at the federal rate calculated in accordance with 28 U.S.C. [§] 1961." *Pl.'s Damages Mem.* at 4. Alpha does not dispute Mr. Dinan's request for pre-judgment interest on the jury's damages award under Maine law. *See Def.'s Damages Mem.* ¶¶ 1-6 (arguing against the application of pre-judgment interest to any trebled damages award under 26 M.R.S. § 626). "In a diversity action, such as the present one, state law must be applied in determining whether and how much pre-judgment interest

should be awarded." *Saint-Gobain Indus. Ceramics Inc. v. Wellons, Inc.,* 24 F.3d 64, 69 n.1 (1st Cir. 2001); *Harmon v. Clark Equip. Co.*, 657 F. Supp. 873, 874 (D. Me. 1987) ("It has long been the law in the First Circuit that the Court must award pre-judgment interest in a diversity of citizenship case where the applicable state law provides for an award of such interest").

In Maine, pre-judgment interest is determined pursuant to Maine Revised Statutes, title 14, section 1602-B, and allows pre-judgment interest for contract cases without provisions on interest at the one-year United States Treasury bill rate plus three percent.   14 M.R.S. § 1602-B.   The purpose of Maine's pre-judgment interest rule is to incentivize the parties to "conduct litigation efficiently." *Batchelder v. Tweedle,* 294 A.2d 443, 444-45 (Me. 1972) ("The plaintiff is allowed interest from the outset of the litigation, provided he causes no delay . . . [d]elays in the process will render [the defendant] liable for additional interest").

The statute governing pre-judgment interest in Maine, Maine Revised Statutes, title 14, section 1602-B, provides:

> 3. . . . In civil actions . . . prejudgment interest is allowed at the one-year United States Treasury bill rate plus 3%.
>
> A.  For purposes of this subsection, "one-year United States Treasury bill rate" means the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue.

*Id.* § 1602-B(3).  Section 1602-B entitles the prevailing party "to interest as a matter of right" and is used by courts to restore the prevailing party to the condition he was

in before the injury occurred. *Avery v. Kennebec Millwork, Inc.*, 2004 ME 147, ¶ 8, 861 A.3d 634, 636; *see Grande v. St. Paul Fire & Marine Ins. Co.,* 460 F. Supp. 2d 163, 166-68 (D. Me. 2006). In the absence of a waiver request by Alpha under section 1602-B(5), the Court concludes that it must award Mr. Dinan pre-judgment interest at the one-year United States Treasury bill rate plus three percent. *See* 14 M.R.S. § 1602-B(3)(A).

For the purposes of calculating when pre-judgment interest began to accrue, the statute instructs the Court that "if a notice of claim has not been given to the defendant, prejudgment interest accrues from the date which the complaint is filed." *Id*. § 1602-B(5). Here, there is no evidence that Mr. Dinan served a notice of claim upon Alpha prior to filing his complaint, and therefore the Court concludes that pre-judgment interest began to accrue on the "date [ ] the complaint [was] filed", July 26, 2010, and continued "until the date on which an order of judgment [was] entered," which will be the date of this Order. *See id.; Grande,* 460 F. Supp. 2d at 166-68; *State Court Record* Attach 1, *Docket Record* (ECF 8-1). Keeping this time period in mind, the parties may calculate the amount of pre-judgment interest on the jury's damages award.

### 3.    Pre-judgment Interest and the Penalty

Alpha's main point about pre-judgment interest is its contention that it should be applied only to the quasi-contractual award of $70,331.93 and not to any penalty. *Def.'s Damages Mem*. at 2. Alpha urges the Court to follow *Estes v. Pineland Farms, Inc.*, No. 2:10-cv-00347-MJK, 2012 U.S. Dist. LEXIS 76309, at *17-

19 (D. Me. June 1, 2012) in which the Magistrate Judge concluded that Maine law allows for pre-judgment interest on the back pay award alone, not the liquidated damages award.  For the reasons in *Estes*, the Court agrees with Alpha's position and it awards pre-judgment interest only to the quantum meruit award, "not to the liquidated damages penalties." *Id.* at *19.

## IV.    CONCLUSION

1. The Court ORDERS Alpha Networks, Inc. to pay Michael Dinan $70,331.93 in accordance with the jury verdict;

2. The Court DENIES the Plaintiff's request for treble damages and attorney's fees under Maine Revised Statutes, title 26, section 626;

3. The Court GRANTS the Plaintiff's alternative request for damages in the amount of $7,799.67 pursuant to California Labor Code, section 203 and ORDERS Alpha Networks to pay Michael Dinan $7,799.67;

4. The Court ORDERS Alpha Networks, Inc. to pay Michael Dinan pre-judgment interest pursuant to Maine Revised Statutes, title 14, section 1602-B on the quantum meruit award of $70,331.93.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2013