UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL DINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00340-JAW |
| | ) | |
| ALPHA NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR ATTORNEY'S FEES**

On September 23, 2014, following his client Michael Dinan's successful appeal to the First Circuit, Attorney Patrick S. Bedard filed an affidavit requesting that the Court order Defendant Alpha Networks, Inc. (Alpha) to pay him $69,647.74 in attorney's fees, expenses, and costs.   The Court concludes that, first, because jurisdiction in this case rests solely on diversity, Maine law governs any award of attorney's fees, and second, that Maine substantive law provides an adequate source of guidance for the Court to calculate fees in this case.  The Court awards $60,639.50 in fees and refers the issue of costs to the Clerk of this Court pursuant to Local Rule 54.3.

I.      **PROCEDURAL HISTORY**

On September 23, 2014, Attorney Bedard filed a motion, supported by an affidavit and exhibit, requesting that the Court order Alpha to pay him $69,647.74 in attorney's fees, expenses, and costs.  *Att'y Fees Aff. for Patrick S. Bedard, Att'y for Michael Dinan* (ECF No. 136) (*Pl.'s Aff.*).  On October 14, 2014, Alpha filed a response.

*Mem. of Law in Support of Def.'s Objection to Pl.'s Fee Pet.* (ECF No. 137-1) (*Def.'s Opp'n*).  On October 28, 2014, Mr. Dinan filed a reply.  *Michael Dinan's Reply to Alpha Network, Inc.'s Objection to His Request for Att'y's Fees* (ECF No. 138) (*Pl.'s Reply*).

## II.   CASE BACKGROUND[1]

On November 8, 2010, Mr. Dinan filed an amended complaint against Alpha, his former employer, for violation of Maine's Timely and Full Payment Wages Law (Maine Revised Statutes, title 26, section 626), breach of contract, breach of quasi-contract, and unjust enrichment.[2]  *Pl.'s First Am. Compl.* (ECF No. 24).  The case went to trial in 2011 and, on the third day of trial, the jury returned a verdict in Mr. Dinan's favor and awarded him damages of $70,331.93 in quantum meruit.  *Jury Verdict* (ECF No. 97).

Following trial, the parties filed briefs requesting that the Court (1) determine whether Maine or California law triggered wage payment penalty provisions and would entitle Mr. Dinan to an increased damages award and attorney's fees, and (2) clarify, in the event Maine or California wage penalty provisions applied, what damages amount pre-judgment interest would run on.  *Pl. Michael Dinan's Mot. that the Ct. Treble the Damages and Add Costs, Interest and Att'y's Fees to the J. in Accordance with 26 M.R.S.A [§] 626, or in the Alternative to Certify This Issue to the Maine Supreme Judicial Ct. in Accordance with 4 M.R.S.A. [§] 57* (ECF No. 106).  Alpha responded on September 21, 2011.  *Alpha Networks' Obj. to Pl.'s Mot. that the*

---

[1]      For a more detailed discussion of the factual background of the case, see *Dinan v. Alpha Networks, Inc.*, 764 F.3d 64 (1st Cir. 2014) and 957 F. Supp. 2d 44 (D. Me. 2013).
[2]      On August 11, 2011, the Court dismissed Count Four, unjust enrichment, following a joint motion.  *Order Granting Joint Mot. to Dismiss Count IV of the Am. Compl.*  (ECF No. 104).

*Ct. Apply Maine Law or Certify the Issue to the Maine Supreme Judicial Ct.* (ECF No. 108).   On September 29, 2011, Mr. Dinan replied to Alpha's opposition.   *Michael Dinan's Reply Brief to Alpha Networks' Obj. to Pl.'s Mot. that the Ct. Apply Maine Law or Certify the Issue to the Maine Supreme Judicial Ct.* (ECF No. 109).

On April 23, 2012, the Court issued an Order certifying to the Maine Supreme Judicial Court Mr. Dinan's question: whether Maine Revised Statutes, title 26, section 626, applies to an employee's quantum meruit damages award.   *Order on Pl. Michael Dinan's Mot. that the Ct. Treble the Damages and Add Costs, Interest, and Att'y's Fees to the J. in Accordance with 26 M.R.S.A. [§] 626, or in the Alternative Certify this Issue to the Maine Supreme Judicial Court in Accordance with 4 M.R.S.A. [§] 57* (ECF No. 110).   On February 21, 2013, the Law Court issued an opinion concluding that Maine Revised Statutes, title 26, section 626, may apply to employees' quantum meruit awards if the award is for services of the type for which an employee would have been due wages.   *Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 2, 60 A.3d 792.

On March 22, 2013, the Court held a telephone conference in which Mr. Dinan and Alpha agreed that given the Law Court's decision, the Court should decide which state's law applies to this case.   *Minute Entry* (ECF No. 114).   On March 28, 2013, Alpha filed a memorandum on the choice of law question.   *Def.'s Mem. on Miscellaneous Damages Issues Raised by the Choice of Law Question Pending Before the Court* (ECF No. 115).   On April 2, 2013, Mr. Dinan filed a memorandum regarding

3

the appropriate choice of law, damages, interest, and attorney's fees. *Pl.'s Mem. of Law on Damages, Interest, and Att'y's Fees* (ECF No. 116).

On July 15, 2013, the Court ordered Alpha to pay Mr. Dinan $70,331.93 in accordance with the jury verdict, denied Mr. Dinan's request for treble damages and attorney's fees under Maine law, granted Mr. Dinan's alternative request for damages under California law, and ordered Alpha to pay Mr. Dinan prejudgment interest pursuant to Maine law. *Order on Choice of Law* (ECF No. 117).

Mr. Dinan appealed this Court's decision to the First Circuit, and on August 20, 2014, the First Circuit held that "Maine's highest court would most likely deem Dinan entitled to the full array of remedies set forth in Maine's wage payment law", and remanded the case to this Court to treble damages, calculate interest, and entertain a request for attorney's fees under Maine Law. *Dinan v. Alpha Networks, Inc.*, 764 F.3d 64, 65 (1st Cir. 2014). Pursuant to the First Circuit's mandate, on September 12, 2014, this Court issued an amended judgment in favor of Mr. Dinan in the amount of $210,995.79 plus interest. *Am. J.* (ECF No. 135).

## III. THE PARTIES' POSITIONS

### A. Attorney Bedard's Request for Attorney's Fees

Attorney Bedard's affidavit details the amount of time spent on this matter and the costs he incurred while working on it. *Pl.'s Aff.* at 1-2. He submitted a seven-page attachment that details the work he did between May 2010 and August 2014, each date of service, the number of hours each task took, and a total fee per task. *Pl's Aff.* Attach 1. (ECF No. 136-1) (*Bedard Invoice*). His affidavit states that he

4

represented Michael Dinan in this case, that the total legal fees and costs for this case are $69,647.74, and that he "redacted any time spent on other matters for Michael Dinan which were not related to the Alpha Networks case." *Pl.'s Aff.* at 1-2.

## B. Alpha's Response

Alpha acknowledges that the Court may award a prevailing party "reasonable attorney's fees" pursuant to 26 M.R.S. § 626. *Def.'s Opp'n* at 1. Alpha does not contest that Mr. Dinan is a prevailing party under 26 M.R.S. section 626 or that $230 per hour is a reasonable hourly rate for an attorney in a matter such as this, but it objects to the amount of fees and costs Attorney Bedard requests, and argues that the Court should decrease by at least 50% the number of hours Attorney Bedard submitted. *Id.* at 1-12. Alpha objects to the fee request insofar as it includes "unnecessary, inefficient, and unreasonable time" and "time spent on unsuccessful issues throughout the case", and objects to costs not recoverable by statute. *Id.* at 1-2.

Alpha contends that the method the Court should use to calculate attorney's fees is the "lodestar" method used by the First Circuit in, inter alia, Title VII fee shifting cases. *Id.* at 2. Alpha maintains that the lodestar method applies because the Law Court "has not endorsed a different method to be used in cases" under 26 M.R.S. § 626. *Id.* at 2 n.1.

As an introductory matter, Alpha points out, the prevailing party has the burden of proving the reasonableness of the hours claimed. *Id.* at 3. Alpha contests Mr. Dinan's fee request under the first prong of the lodestar analysis, which deals with the reasonableness of the hours expended by the prevailing party's attorney. *Id.*

at 2. Alpha asserts that the reasonableness of the number of hours spent on a task must be supported by "proper documentation" that "reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity". *Id*. at 3. One example of inadequate documentation, Alpha says, is a practice called "block billing." *Id*. at 4.

Alpha defines "block billing" as "grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id*. (citing *McAfee v. Boczar*, 906 F. Supp. 2d. 484, 497 (E.D. Va. 2012)). Because block billing "prevents an accurate determination of the reasonableness of the time expended in a case", Alpha argues, "it constitutes a proper basis for reducing a fee award." *Id*. at 4. Alpha argues that Attorney Bedard's fee request contains multiple examples of block billing that make it "impossible . . . to determine how much time was spent on any particular task." *Id*. at 6. Additionally, Alpha argues, Attorney Bedard should not be compensated for time on the unsuccessful breach of contract claim, and his billing entries make it impossible to separate out the compensable from non-compensable work. *Id*.

Alpha also objects to various entries for reasons other than block billing, including time spent researching topics "about which [Attorney Bedard] is presumed to know", preparation of a fee agreement, time spent preparing an unsuccessful summary judgment motion, and time spent on an unsuccessful discovery dispute. *Id*. at 9-10. Alpha also argues that all of the time billed after July 19, 2013 must be presented to the First Circuit for determination of a fee award, and that Attorney

6

Bedard's entry describing the work he did on the appeal "does not meet the standards of specificity and contemporaneous time recording required to justify an award of fees." *Id*. at 10.

Finally, Alpha objects to requests for costs that it says are outside the scope of 28 U.S.C. § 1920, including (1) a request for a fee paid to this Court that Alpha paid when it removed the case, (2) fees for printed and electronically recorded transcripts that were not used at trial, (3) the cost of an interpreter for the depositions taken in California, and (4) so-called "overhead" expenses such as hotel bills, telephone conferences, and postage. *Id*. at 10-11.

### C.    Mr. Dinan's Reply

Mr. Dinan argues that state, not federal, law should determine the reasonableness of his attorney's fees request because the award itself is pursuant to 26 M.R.S. § 626. *Pl.'s Reply* at 1. He states that the analyses may not differ, but maintains that Maine law is the proper source of law in this case. *Id*. at 1-2.

Mr. Dinan argues that the "bottom line in any fee award is the result obtained" and notes that the result obtained in this case was a $210,995.79 judgment in his favor. *Pl.'s Reply* at 3. He contends that his claim for legal fees and costs is reasonable considering the case spanned almost four years and went through a three-day jury trial, certification to the Maine Law Court, and an appeal to the First Circuit. *Id*. at 4-5. Furthermore, he maintains, even though he recovered on one claim, his prosecution and defense of all claims were based upon a common nucleus of operative fact, making it difficult to distinguish which fees apply to which claims or defenses.

7

*Id.* at 4.  Finally, Mr. Dinan lists a number of tasks his attorney completed as part of the case, and responds to Alpha's specific fee objections, arguing that he has demonstrated the reasonableness of his fee request.  *Id.* at 5-6.

## IV.   DISCUSSION

### A.   Maine Law Governs the Award of Reasonable Attorney's Fees and Costs

The parties have questioned whether federal or state law should govern the fee and cost determination.  Mr. Dinan contends that Maine law applies; Alpha cites First Circuit law.  *Pl.'s Reply* at 1-2; *Def.'s Opp'n* at 2.  The parties do not point to any significant differences applicable to this case between state and federal law on the awarding of attorney's fees, and in general, federal and Maine law on attorney's fees are congruent.  In evaluating attorney's fee applications, the Maine Supreme Judicial Court follows the factors listed in *Johnson v. Georgia Highways Express, Inc.*, a Fifth Circuit case.  *See Poussard*, 479 A.2d at 884 (citing *Johnson*, 488 F.2d 714, 717-719 (5th Cir. 1974) (abrogated on other grounds)).  The First Circuit has also "embraced the *Johnson* factors for use in sculpting fee awards".  *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 & n. 3 (1st Cir. 1997).

Technically, Maine law applies.  The First Circuit has stated "the basic premise that the issue of attorneys' fees has long been considered for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees."  *In re Volkswagen and Audi Warranty Extension Litigation*, 692 F.3d 4, 15 (1st Cir. 2012) (citing *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010) ("Where, as here, the court's jurisdiction is based on diversity of the parties,

8

a district court's award of attorneys' fees is governed by relevant state law . . . .")).  As jurisdiction in this case rests solely on diversity of citizenship and the statute that allows for the recovery of attorney's fees is a Maine statute, the Court concludes that Maine law governs the award of costs and fees in this case.

Nevertheless, the Court has reviewed decisions from both the Maine Supreme Judicial Court and the First Circuit as helpful in resolving the pending motion.  *See Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶ 29, 901 A.2d 189 ("We have said that when analyzing entitlement to attorney fees pursuant to Maine consumer protection statutes, such as the [Unfair Trade Practices Act], the methods of analysis courts use in cases involving the federal civil rights attorney fee provision, 42 U.S.C. § 1988, are appropriate"); *Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 883 (Me. 1984) ("Although the methods of analysis employed by this Court and the federal courts in civil rights litigation involving 42 U.S.C. §§ 1983 and 1988, are not controlling, the analogy is useful and appropriate to the extent that the various provisions for attorney's fees are designed to aid in the effective enforcement of the acts in question").

Maine, like other states, follows the "American Rule" for attorney's fees; that is, "each party pays the costs of his own lawyers."  *Jackson v. Inhabitants of Town of Searsport*, 456 A.2d 852, 855 (Me. 1983).  However, a court in Maine may award attorney's fees in the following circumstances: (1) "contractual agreement of the parties", (2) "clear statutory authority", or (3) "the court's inherent authority to

sanction egregious conduct in a judicial proceeding". *Baker v. Manter*, 2001 ME 26, ¶ 17, 765 A.2d 583.

The Maine statute applicable here provides that an employer found in violation in an action for unpaid wages under that section is liable for the unpaid wages including a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages "and costs of suit, including a reasonable attorney's fee." 26 M.R.S. § 626. As the unpaid wages and liquidated damages have been resolved, the only undetermined amounts are the costs of suit and reasonable attorney's fees. The parties agree there is scant guidance regarding the interpretation of "costs of suit, including a reasonable attorney's fee" under section 626 in Maine caselaw and have cited both Maine and First Circuit law in support of their respective positions.[3]

### B.   Whether the Fee Claims Can Be Separated from the Non-Fee Claims

The Maine Law Court has stated that attorney's fees may be reduced "for time spent on unsuccessful claims." *Bangs v. Town of Wells*, 2003 ME 129, ¶ 20, 834 A.2d 955. However, in cases with related fee and non-fee claims,

> the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

---

[3]      A number of the Maine decisions on attorney's fee awards address the Maine Unfair Trade Practices Act, 5 M.R.S. § 205-A-214. *See Pilecki*, 2006 ME 84, 901 A.2d 189; *Poussard*, 479 A.2d 881 (in part). These decisions are helpful, but the Maine Unfair Trade Practices Act contains a specific provision that the award of attorney's fees must be made "irrespective of the amount in controversy." 5 M.R.S. § 213(2). In *Poussard*, the Maine Law Court rejected the defendants' "disproportionate to the amount of recovery" argument in part based on this language. *Poussard*, 479 A.2d at 885-86. Maine's Timely and Full Payment of Wages law, 26 M.R.S. §§ 612-a to 636, does not contain similar language.

*Pilecki,* 2006 ME 84, ¶ 32, 901 A.2d 189 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983)).

Thus, under Maine law, "[p]arties are required to apportion their attorney fees between the claims for which fees may be awarded and the claims for which there is no entitlement to fees." *Pilecki*, 2006 ME 84, ¶ 30, 901 A.2d 189 (citing *Beaulieu v. Dorsey*, 562 A.2d 678, 679 (Me. 1989)). "[T]he burden is on the party requesting fees to separate the costs of pursuing the fee claims from the costs of pursuing the non-fee claims". *Id.* ¶ 32. However, "legal services are rarely performed with regard to discrete and identifiable claims within a multi-claim complaint", *Poussard*, 479 A.2d at 885, and it can prove "difficult to divide counsel's time on a claim-by-claim basis" when a case involves "a common core of facts" and "related legal theories".[4] *Id.* ¶ 30.

In this case, Mr. Dinan's First Amended Complaint alleged four theories in four separate counts: (1) violation of 26 M.R.S. § 626; (2) breach of contract; (3) breach of quasi-contract; and (4) unjust enrichment. *Am Compl.* (ECF no. 24). The jury found that Alpha had not breached its employment agreements with Mr. Dinan, and that it did not breach its separation agreement with Mr. Dinan, but that Mr. Dinan

---

[4]     The Law Court has upheld awards of attorney's fees both in cases where fees were and were not apportioned between fee and non-fee claims. *Compare William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995) (award not apportioned between fee and non-fee claims where all the claims arose from the contractor's failure to have a written contract), *with VanVorhees v. Dodge*, 679 A.2d 1077, 1082 (Me. 1996) (award apportioned between fee and non-fee claims when party requesting fees failed to submit an affidavit that demonstrated that the fees were incurred in pursuit of the claim they prevailed on), *and Poussard*, 479 A.2d at 885 (award apportioned between fee and non-fee claims when party requesting fees was unsuccessful in certifying a class in the fee-related claims, and it was possible to determine the number of hours spent prior to the motion for maintenance of a class action and subsequent to the decertification order; although the trial court made an "unlikely assumption" that no interim hours were related to the non-class action, but was reasonable nonetheless).

was entitled to damages under quasi-contract. *Verdict Form* (ECF No. 97). Following the favorable verdict on the quasi-contract count, the parties stipulated to the dismissal of the unjust enrichment count because under Maine law, recovery on a contract theory precludes recovery on an unjust enrichment theory. *Jt. Mot. to Dismiss Count IV of First Am. Compl. as Moot* (ECF No. 103); *Order* (ECF No. 104).

Because Mr. Dinan obtained a favorable judgment on his quasi-contract and 26 M.R.S. § 626 claims, but was unsuccessful on his breach of contract claim, Alpha argues that he should be required to separate out the time he spent on the successful and unsuccessful claims and should be awarded only for his successful efforts. Both claims arose from Alpha's failure to pay Mr. Dinan's wages, which included sales commissions. His attorney's affidavit does not apportion between time spent on the breach of contract claim and on the quasi-contract claim. However, the affidavit states that the fees and costs he requests were incurred only as part of this case.

Having reviewed the trial transcript, the Court concludes that the successful and unsuccessful claims in this case arose from a "common core of facts", and that it is impossible to accurately separate out Attorney Bedard's work on the breach of contract claim from that on the quasi-contract claim. Nor is this a case where the unsuccessful theory so drove the trial that the time must in fairness be apportioned. Nor would there be an obvious way to arrive at an appropriate percentage reduction.

There is another sub-issue on apportionment. During the run-up to the trial in this case, both parties filed extensive motions for summary judgment, neither of which was successful. Alpha contends that Attorney Bedard's efforts in preparing

his unsuccessful motion for summary judgment should be uncompensated as Mr. Dinan did not prevail on that motion. The Court agrees. Here, the attorney time and charges related to the unsuccessful motion are delineated in the attorney invoice. The Court has separated out and subtracted the time and charges directly related to the Mr. Dinan's motion for summary judgment.

## C.     The Reasonableness of Attorney Bedard's Fee Request

Although Maine has set forth no precise formula for computing reasonable attorney's fees under section 626, the Law Court has adopted a list of relevant factors for determining the proper amount of an attorney's fee award in unpaid wages cases. *See, e.g., Gould v. A-1 Auto, Inc.*, 2008 ME 65, ¶ 13, 945 A.2d 1225. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Poussard*, 479 A.2d at 884 (citing *Johnson*, 488 F.2d at 717-719). "The most important of the . . . factors is the result obtained." *Wyman v. Sec'y of State*, 625 A.2d 307, 312 (Me. 1993).

The parties agree that Mr. Dinan is entitled to an award of attorney's fees. The only issue before this Court is determination of the amount to which Mr. Dinan is entitled. Mr. Dinan's request lists 274.45 hours at $230 per hour for a total attorney's fee request of $63,123.50. *Pl.'s Aff.* at 1. Mr. Dinan argues that his request for

attorney's fees is reasonable because the result obtained was a $210,995.79 judgment against Alpha, and resolution of the case required a three-day jury trial and appeals to both the Law Court and the First Circuit. *Pl.'s Reply* at 3.

Alpha does not take issue with Attorney Bedard's hourly rate, but it objects to "unnecessary, inefficient and unreasonable" time spent on the case as well as "time spent on unsuccessful issues". *Def.'s Opp'n* at 1-2. Alpha argues that the reasonableness of Mr. Dinan's fee request should be assessed in light of the "absurd nature" of his demand at trial of over $700,000 as compared to the amount of the judgment in his favor. *Id.* at 8-9.

### 1.    The Settlement Demand and the Amount of Damages

Alpha contends that the Court should take into account "the absurd nature of the Plaintiff's demand through trial vis a vis his actual result." *Def.'s Opp'n* at 9. Alpha says that Mr. Dinan's "demand at trial" was "over $700,000." *Id.* at 8. Measuring the attorney's fees demand against the jury verdict of $73,331.93, an amount nearly one-tenth of the amount allegedly demanded, Alpha argues that an attorney's fee award of $63,123.50 is unreasonable. *Id.* at 8-9.

There are several problems with Alpha's argument. First, Alpha has not properly placed the underlying facts before the Court. Defense counsel merely asserts in its opposition memorandum that Mr. Dinan made a $700,000 settlement demand during trial. The assertion is not in evidentiary form; it is unaccompanied by an affidavit or sworn declaration. Generally, absent an agreement of counsel, the Court does not accept blanket assertions of fact in memoranda by attorneys.

14

Second, if the Court considered the status of settlement discussions, it would have to be assured that it had a complete picture of the discussions. Here, Alpha mentions only Mr. Dinan's $700,000 demand during trial. *Def.'s Opp'n* at 8-9. It says nothing about its response, whether it made any offers, and whether Mr. Dinan made any counter-demands. It also restricts itself to the demand during trial and mentions no other settlement discussions during the course of the litigation. Settlement demands become real only in relation to an offer. Without more, the demand alone stands in a vacuum and reveals little about the significance of the verdict for purpose of the pending motion.

Third, in interpreting the Fees Act, 42 U.S.C. § 1988, the First Circuit has written that a trial court may consider the "chasmal gulf" between the demand in the complaint and the final result, and "the course of settlement negotiations" in determining a reasonable fee. *Coutin*, 124 F.3d at 338, 341. Even though under First Circuit law, a trial court has the right "to keep" a discrepancy between settlement discussions and the final result "in mind", the *Coutin* Court cautioned that "it cannot amount to more than one element in the constellation of factors that the court considers when determining the quality of the results obtained." *Id.* at 338. The First Circuit stressed in *Coutin* that "the Supreme Court has identified results obtained as the preeminent consideration in the fee-adjustment process." *Id.* (citing *Hensley*, 461 U.S. at 432, 440). The Maine Supreme Judicial Court has also viewed as critical the amount the prevailing party actually obtained. *Wyman*, 625 A.2d at 312; *Poussard*, 479 A.2d at 886 (focusing on the "actual amount of recovery obtained").

Fourth, Alpha uses the verdict amount of $73,331.93 alone as the measure of Mr. Dinan's success. Here, in compliance with the First Circuit's mandate, this Court entered judgment in favor of Mr. Dinan in the total amount of $210,995.79 consistent with the damages enhancement provision of 26 M.R.S. § 626. The "results obtained" equal $210,995.79, not $73,331.93. *Poussard*, 479 A.2d at 886. Here, the attorney's fees equal about one-third of the final judgment, an unremarkable ratio.

In sum, even though the Court likely has the authority to consider settlement discussions on an attorney's fee motion, here evidence of those discussions is not properly before the Court and is too scant to make a difference.

### 2. Block Billing

Alpha spends nearly half of its objection addressing so-called "block billing". *Def.'s Opp'n* at 4-9. Quoting a district court case from the Eastern District of Virginia, Alpha defines "block billing" as "grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id.* (*McAfee*, 906 F. Supp. 2d at 498 (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)). The *McAfee* Court noted that "[t]his type of entry makes it difficult to ascertain how much time was spent on each task" and the "practice of 'block billing' has been generally disfavored in federal courts across the country and has often led to a reduction in attorney's fees." *Id.*

Accepting Alpha's argument that block billing is disfavored and may be grounds for reducing an attorney's fee request, Alpha actually objected to only two such entries in Attorney Bedard's invoice:

16

(1) <u>2.00 hours</u>: Review of recent orders; draft Motion to Modify part of Scheduling Order, Demand for Jury Trial, completed Answer to Counterclaim; review relevant parts of law and email to client after filing with Court. *Bedard Invoice*, Sept. 9, 2010.

(2) <u>2.30 hours</u>: Conference with client about discovery, interpretation of contract, and various other pending issues in the case; memo to file on meeting. *Bedard Invoice*, Dec. 28, 2010.

Regarding the September 9, 2010 entry, the Court agrees that the entry fails to adequately inform the Court as to the amount of time spent on each task. Although the entry refers to reviewing "recent orders", the Court is unclear what Attorney Bedard is referring to. On August 13, 2010, the Court issued a short standard procedural order for a removed case, requiring counsel to file a complete record of the state court proceeding with the federal court. *Procedural Order* (ECF No. 3). On August 16, 2010, the Magistrate Judge granted a motion for extension of time within which to answer. *Order* (ECF No. 7). On September 1, 2010, the Magistrate Judge issued a three-page scheduling order. *Scheduling Order* (ECF No. 11). None of these orders should have taken Attorney Bedard much time to review. The next entry is for a motion to modify part of the scheduling order. It appears that this entry is for a two-page motion to add the Plaintiff's jury trial demand to the scheduling order, again a straightforward motion. *Pl. Michael Dinan's Objection to Part of the Scheduling Order Dated Sept. 1, 2010 and Mot. to Modify the Order, and if Necessary Mot. to Extend the Time for Filing a Demand for Jury Trial* (ECF No. 14). The next

17

entry is to prepare a three-page answer to the counterclaim, another routine matter. *Michael Dinan's Answer and Affirmative Defenses to Countercl. of Alpha Networks, Inc.* (ECF No. 12). Attorney Bedard also mentions reviewing the law and emailing his client. Having attempted to reconstruct the amount of time necessary to perform the duties that are a matter of record, the Court reduces the 2.0 hour entry by one half to 1.0 hours.

The other entry is a 2.3-hour entry for a conference with Mr. Dinan regarding "discovery, interpretation of the contract, and various other pending issues in this case, memo to file on meeting." *Bedard Invoice*, Dec. 28, 2010. Here, the Court disagrees with Alpha about the need for greater specificity. This meeting occurred during dueling motions for summary judgment and following Alpha's December 20, 2010 responses to Mr. Dinan's discovery requests. A 2.3-hour meeting with a client in the middle of a case of this complexity strikes the Court as unremarkable and the Court is not convinced that in order for the Court to evaluate the reasonableness of Attorney Bedard's fee, it is necessary for him to reveal exactly how much time he spent on each issue during each client conference. If the meeting were so extended that the time being charged raised doubts about its reasonableness, it would be a different matter.

Finally under the rubric of block billing, Alpha complains about "references to conferences with Mr. Dinan and e-mails 'drafted and sent' that do not disclose the specific tasks undertaken." *Def.'s Opp'n* at 6. But Alpha has failed to identify which entries it contends are objectionable. The Court's review of the email entries

indicates that most contain a general description of the subject and purpose of the email. *See Bedard Invoice*, Feb. 17, 2011 ("Draft of various e-mails on this case about depositions, how done and meeting with Mike next week"); Feb. 18, 2011 ("e-mail to Mike Dinan about depositions and e-mail on Saturday about cost of deposition needing both rooms"); Feb. 21, 2011 ("Draft of e-mails about how depositions to be conducted in this case"). Absent more specificity from Alpha, the Court will not do Alpha's job for it and scrutinize each entry to see if Alpha would and could have objected specifically, but did not object. *See Pilecki*, 2006 ME 84, ¶ 34 ("Although Spence and Advanced contend that the trial court abused its discretion in not apportioning fees to the fee claims, they did not assist the trial court by pointing to any specific items in the legal bills for which the Pileckis were not entitled to payment"). Regarding the asserted lack of specificity about client conferences, the Court disagrees with Alpha for the reasons earlier stated and because Alpha has not pointed to any specific objectionable entries. Similarly, the Court declines on this record to cut the fee across the board. Alpha has not made the case for such a reduction.

The Court reduces the fee by one hour for the September 9, 2010 entry by $230.00.

### 3.   Specific Objections Other Than Block Billing

Next, Alpha specifically objects to (1) 2.9 hours researching service of process and failure of consideration issues, on the grounds that Attorney Bedard is "presumed to know" about service of process and that failure of consideration "never came up in

the case"; (2) .4 hours preparing a fee agreement; (3) 9.4 hours preparing an unsuccessful motion for summary judgment; and (4) 3.7 hours spent on an unsuccessful discovery dispute. Alpha provides the Court with no authority for these objections.

Mr. Dinan responds that the 2.9 hours "would have been spent primarily on failure of consideration, which was an issue in this case", the "fee agreement entry is self-explanatory", the summary judgment motion entries are valid because the issues raised on summary judgment carried through trial, and that the "discovery dispute" centered around Mr. Dinan's need to be present at the depositions of Hander Hsing and two other Alpha employees. *Pl.'s Reply* at 6. Regarding the motion for summary judgment, Mr. Dinan contends that under *Pilecki*, he is entitled to an attorney's fee even on the unsuccessful motion for summary judgment and he points out that he was successful in defending against Alpha's motion for summary judgment. *Id.*

The Court disagrees with Alpha on the 2.9-hour failure of consideration entry, agrees with Alpha on the .4-hour fee agreement entry, agrees with Alpha on the 9.4-hour entry for the motion for summary judgment, and disagrees with Alpha on the 3.7-hour entry on the discovery issue. Regarding the failure of consideration issue, the Court concludes that it could well have been a contested issue in this case and Attorney Bedard acted appropriately in researching it. Regarding the fee agreement, this is a matter between Mr. Dinan and Attorney Bedard and is not chargeable to Alpha. Regarding the discovery dispute about how and where the deposition of Alpha officials were to take place, the Court views the issues about where the defendant's

employees were to be deposed to be a potentially significant one, presenting an issue of expenses for his individual client and leading to a conference with the Magistrate Judge.  The Court does not reduce the 3.7-hour charge.

Turning to the motion for summary judgment, Alpha objected to the following entries: November 1, 2010, November 3, 2010, November 4, 2010, November 8, 2010, and November 10, 2010, which it says totals 9.4 hours.  *Def.'s Opp'n* at 9.  The contested entries are:

(1) 5.3 hours: November 1, 2010: Draft and research most of Motion for Summary Judgment, drafted rough draft of this and Affidavit of Michael Dinan and Statement of Uncontested Facts; research in law library issues related to counteroffer, rescission, and not being able to enforce contract;

(2) 1.5 hours: November 3, 2010: Review law and draft of rest of Motion for Summary Judgment and Memorandum of Law;

(3) 1.40 hours: November 4, 2010: Draft rest of Motion for Summary Judgment, Affidavit and Statement of Uncontested Facts; completed slight changes to Motion to Amend Complaint and Order and filed with the Court;

(4) 1.50 hours: November 8, 2010: Draft amended complaint, various e-mails to Michael and changes to the affidavit and statement of uncontested facts for summary judgment; filed amended complaint in federal district court; and

(5) <u>0.50 hours</u>: November 10, 2010: Draft of changes to motions, affidavits, and filed paperwork for summary judgment later in the week with the federal district court.

*See Bedard Invoice*.  By the Court's calculation, the total amount of time for all of these entries is 10.2, not 9.4 hours.  Nevertheless, as some of the entries are for matters unrelated to the preparation and filing of the motion for summary judgment, the Court has used Alpha's 9.4-hour figure.

In his reply, Mr. Dinan asserts that "Alpha's argument that any claim or argument Dinan made which failed should result in a denial of those attorney's fees was rejected by the Law Court in *Pilecki*."  *Pl.'s Reply* at 6.  Mr. Dinan did not provide a pin cite for where in *Pilecki* the Law Court made such a pronouncement and the Court's review of the *Pilecki* decision revealed no such proposition.  To the contrary, the Law Court wrote the following regarding entitlement to an attorney's fee on appeal:

> Because they have prevailed on appeal, the Pileckis are entitled to fees for the appeal.

*Pilecki*, 2006 ME ¶ 35.  The obverse is that if the Pileckis had not prevailed on appeal, they would not have been entitled to a fee award.

Here, Mr. Dinan filed an unsuccessful motion for summary judgment.  He is not entitled to a fee award for unsuccessful work that can be demarcated from successful work.  The Court therefore reduces his bill by 9.4 hours or $2,162.

### D.    Fees for Appeal to the First Circuit

Alpha states that all the time spent on appeal must be presented to the First Circuit under First Circuit Rule of Appellate Procedure 39.1. *Def.'s Opp'n* at 10. It is wrong. First Circuit Rule 39.1(b) states:

> An application, under any statute, rule or custom other than 28 U.S.C. § 2412, for an award of fees and other expenses, in connection with an appeal, must be filed with the clerk of the court of appeals within 30 days of the date of entry of the final circuit judgment, whether or not attorney fees had been requested in the trial court, except in those circumstances where the court of appeals has ordered that the award of fees and other expenses be remanded to the district court for a determination.

FIRST CIR. R. 39.1(b). In its opinion, the First Circuit remanded the case for further proceedings consistent with its opinion and stated that "[c]osts are awarded to Dinan". *Dinan*, 764 F.3d at 73.

In addition, the award of attorney's fees is being made pursuant to Maine law and the Law Court has expressly held that "[t]he determination of the reasonable fee . . . is a factual matter for the trial court." *Pilecki*, 2006 ME ¶ 35 (quoting *Beaulieu v. Dorsey*, 562 A.2d 678, 680 (Me. 1989)). Furthermore, the Law Court has allowed attorney's fees for defending an appeal of claims arising under section 626. *See Bisbing v. Maine Medical Center*, 2003 ME 49, ¶ 9, 820 A.2d 582. The Court concludes that Mr. Dinan is entitled to attorney's fees for his success in this Court's certification to the Law Court and his success in defending Alpha's appeal to the First Circuit.

### E.    Other *Johnson* Considerations

To end, the Court touches on the Fifth Circuit's list of considerations in *Johnson* that both the Maine Supreme Judicial Court and the First Circuit have used as a guide to the assessment of attorney's fee applications. This case turned out to

be unusually complicated.  Mr. Dinan's original Complaint was filed in state court on July 26, 2010; an amended judgment was finally entered on August 20, 2014 in federal court.   In order to secure the judgment, the Plaintiff was required to successfully defend a motion for summary judgment, to litigate a three-day federal jury trial, to obtain a significant verdict, to convince this Court to certify a state law question to the Maine Supreme Judicial Court, to obtain a favorable ruling from the Maine Law Court on an issue of statutory interpretation, and to prevail in a technical conflict of laws issue before the First Circuit Court of Appeals.   In so doing, the Plaintiff helped clarify an unanswered point of Maine law, namely that Maine's Timely and Full Payment of Wages law applies to quantum meruit claims, a ruling that has implications beyond this case, and he also ably argued the choice of law question before the First Circuit, causing the appeals court to vacate this Court's award and issue an amended judgment for substantially more than the original judgment.  This description of what the Plaintiff was able to achieve through his counsel speaks well for his professionalism and skill and goes to the heart of the *Johnson* criteria.   The Court is also mindful that the Plaintiff faced extremely professional and skillful defense counsel and that he was able to achieve this ultimate victory despite a determined and adept defense.   In light of the complexity of this case, the length of time it has taken, the need for a multi-day jury trial, trips to the Maine Supreme Judicial Court and the First Circuit Court of Appeals, the Court views the submitted attorney's fee to be extremely reasonable.

Finally, the Maine Supreme Judicial Court observed that the Maine Legislature, in enacting attorney's fee provisions for prevailing parties in certain statutes, "intended to encourage litigation which might otherwise be prohibited by economic considerations, in order to vindicate important public interests." *Poussard*, 479 A.2d at 886 n.6. Here, the Court views Maine's Timely and Full Payment of Wages law as one of those statutes where the Maine legislature has allowed the prevailing party to obtain an attorney's fee award "to vindicate important public interests", *id.*, and the Court views the Plaintiff's attorney fee application to be consistent with this legislative intent.

Reducing the $63,123.50 total fee by $2,162.00 for the unsuccessful motion for summary judgment, $92.00 for his fee agreement, and $230.00 for block billing, the Court orders a total attorney's fee of $60,639.50.

## F.    Costs of Suit

Mr. Dinan asks this Court to order $6,524.24 in costs. *Pl.'s Mot.* at 1. Although the award of costs in Maine is defined by rule, Maine Rule of Civil Procedure 54(d), and by statute, 14 M.R.S. §§ 1501-1522, the United States Supreme Court ruled in 1932 that the federal statute governs the taxing of costs in a federal case. *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 284 U.S. 444, 447-48 (1932). The First Circuit has held that this rule "applies in diversity cases." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir. 1985); *Bosse v. Litton Unit Handling Sys., Division of Litton Sys., Inc.*, 646 F.2d 689, 695 (1st Cir. 1981). Under Local Rule 54.3, after the prevailing party files a bill of costs, the Clerk taxes the costs properly

claimed.  D. ME. LOC. R. 54.3.  In compliance with the Local Rule, the Court refers the costs of suit question to the Clerk for disposition.

## V.      CONCLUSION

The Court GRANTS Michael Dinan's Motion for Attorney's Fees (ECF No. 136) in the total amount of $60,639.50 and REFERS his request for taxation of costs to the Clerk of Court pursuant to Local Rule 54.3.

SO ORDERED.

/s/John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of April, 2015